Ryan O'Day of Shulman Hodges and Bastion, on behalf of Appellee John M. Wolfe, Chapter 7 Trustee for the Bankruptcy Estate of Transact, Inc. The facts of the underlying litigation are relatively complex. However, the facts before this Court on this appeal are relatively straightforward. And I think… Excuse me, counsel, for interrupting, but you seem to argue that the issues on appeal are all legal. They are. And not factual. Doesn't this ignore the language of the district court's order? I didn't want my comment to be taken that I was arguing the facts. I was saying that the facts, and this was put in Appellee's brief, that the facts of the underlying litigation are, in fact, complex, yet the two narrow legal issues before this Court are relatively straightforward. Didn't the district court send it back for a whole bunch of factual determinations that go way beyond just some simple mathematical calculation? Yes. There were many, many things sent back on remand. However, you need to question whether any of these things should have been sent back on remand at all, whether anything should have been overturned, given the standard of review that the district court applied to its analysis. Then you're saying we should decide the merits, and if we decide the merits in your favor, then we would decide there was jurisdiction. I believe this Court has jurisdiction because the pure legal issues here would obviate the need for further fact-finding down below, or, in the alternative, would aid the trial court on remand. Well, assuming what you say is true, I have a problem with jurisdiction. And if we claim that there is, wouldn't resolving the issues on appeal lead to piecemeal litigation? I don't believe so, Your Honor, and respectfully, I will ask a question. I think the question is, on remand, what is the trial court supposed to do? The trial court is supposed to adopt factual findings it didn't make, do further fact-finding to support conclusions it didn't come to, to the opposite ruling it didn't come to. Well, I mean, you know, basically, so what you want us to say, so on the one, let's just take one of the ruling, one of the issues that the district court addressed, which was whether or not there was a material breach for failure to turn over or produce the plans. Correct. Right? So the bankruptcy court, as I understand it, said, yeah, that was a material breach, right? Correct. And the bankruptcy, and the district court said, no, not under the standard under California law is that a material breach. And then he said, because it's not a material breach, there may be still damages available, but those damages can only relate to the delay. And so on that issue, the bankruptcy court didn't decide those facts, and so it has to go back for that. So you want us, you want us to decide whether the district court erred in its determination that there was a material breach. Correct. And again, I think the court, at least in its comments, are focused on the end result versus the means that gets you to the ends. And I think it's the means that are important here. The district court came to the conclusion that this did not. No, wait, wait. I'm not through yet. I wasn't through. I'm sorry. Okay. So, I mean, that's one, and there's another issue that you raised. Correct, Your Honor. Okay? There were a host of other rulings that the district court made that are not going to be impacted by whatever we do on those two issues. I agree to a certain extent. Well, I mean, there are other issues that are still going to have to go back to the bankruptcy court and be resolved that you carefully avoided not including in your notice of appeal because you wanted to make it look like all we had were these two very narrow, limited legal issues. Well, I think. And, in fact, that's not the case at all. As I read the district court's order, there's much to be done now. And as Judge Nelson said, we don't want to engage in piecemeal decision-making. We want to get the whole thing all wrapped up in one neat package that we can decide. And I understand that concern, and I understand that desire. I think the issue here, though, let's assume the entire thing is remanded as it was by the district court to the trial court for further fact findings. The further fact findings, at least as the two issues on appeal, are two issues that the court, the district court, overstepped its permissive standard of review upon. And I think that's the issue is the district court says this is going to be remanded on the issue of materiality. It was not material because time wasn't of the essence. And this was a mere delay in delivering the plans versus a total failure to deliver. It's factually correct, of course. I mean, the plans were delivered. See, but that's the issue. Factually correct based on the weighing of the district court's analysis of those facts. And I'd like to read to this court what the bankruptcy court, the trial court, after eight days of trial concluded on this very issue. And this is at Volume 1, Tab 1. I don't have the excerpts of record number. I apologize, but it's in the bankruptcy court's order, Paragraph 21. Pebble Court's failure to deliver the city-approved plans to Transact as required under the purchase and sale agreement was a substantial factor causing Transact's damages. The entire construction project was jeopardized and eventually halted in part on Pebble Court's failure to deliver city-approved plans to Remont. The construction project transaction was predicated on Pebble Court's delivery of the plans to build the custom home. Without accurate plans, the construction project would fail. Transact's purpose in purchasing the Pebble property was to develop it and sell it. Without complete construction plans, this expectation was impossible. As a result, Transact's expectation interests under the purchase and sale agreement were defeated by Pebble Court's failure to deliver the city-approved plans. That is the factual overview that the bankruptcy court puts on the end of its analysis on the materiality of the breach of the PSA. That analysis, that weighing of facts, is diametrically opposed to the district court's weighing of the very same facts. They had a clear error review of these facts, yet the district court went above and beyond that clear error and put itself in the shoes of the trier of fact. Why was it just clear error? It sent it back and said, obviously they went ahead with it after this, so did they agree to do this? How much was the delay? I mean, what difference did it end up making? I mean, the plan did go ahead. See, but I think if you look at the timeline of the plan going ahead, it highlights the problem itself. It was contemplated from the get-go that when Transact was going to purchase the Pebble property, its sole purpose for purchasing it was to develop the property. Evident by that fact, the PSA includes a requirement that the Pebble Court was required to provide these city-approved plans within 90 days. So in the PSA itself, it's made abundantly clear that the only purpose for purchasing it was to develop the property. There was some issue about, well, what if those plans were done in 90 days? And isn't that one of the things that the district court was concerned about? And there was also, and I think the district court also raised the issue of, well, if they were done, it was a matter of paying $30,000 and work it out later who was supposed to pay it. And then they went ahead with their escrow and they got their plans. And they don't even know for sure when. Did they get them on the day of the escrow? Did they get them two weeks later? I mean, there's just lots of things there. I don't disagree that's the district court's findings. But again, the district court, not being the trier of fact, wasn't there to hear eight days of testimony. On that point, and what the – Looks like he did a pretty thorough review of the record, though. He may have. There are contradictory statements in there where it appears that he didn't review it as thoroughly as it would seem. But notwithstanding, the district court, and as we noted in our brief, seems to oversimplify the transaction itself. And while, yes, it was two weeks post-closing of escrow, it was a mere six weeks of delay, what occurred in that timeframe? What occurred in that timeframe was a construction budget that was to be agreed upon. Contemporaneous with Transact being provided a copy of plans called not for construction, at the same time, Robert Hall provided a completely different set of plans to the city of Corona del Mar. He didn't tell Vermont, by the way, these plans I'm giving you don't amount to anything. Quite to the contrary. What he said is, you can rely on these plans for the purpose of creating a construction budget. Going forward in time, no one ever stood up and said, oh, by the way, the plans that we put forth with the city are not sufficient to create your budget. No. They let him march all the way forward, all the way through closing. He had no clue that the foundation had doubled. He had no clue that $300,000 was added to the foundation itself. So, going forward in time, yes, they did operate under it, notwithstanding there being the delay. Why? The six weeks of delay that would have been a breach, he was assured that there was nothing that you needed to see, because you could rely on these for the purpose of creating a construction budget. It wasn't until he, Alan Remont, the CEO and president of Transact, had submitted the new plans to Tom Bacon, the man at Cali Construction who was retained to do the foundation, that he stood up and said, you know what, this is a massive change. It's going to add $300,000. To what was the budget? The budget was $3.2 million. We're talking $300,000? Over $300,000, however, and yes, that sure seems to be a small amount, but that was the linchpin by which DiRico refused to fund the third draw. So, all the while, the DiRico parties knew that the plan submitted to the city had a completely modified foundation, yet allowed Transact and Remont to operate under the misguided belief that the plans he was provided were sufficient. However, that wasn't true. Going forward in time, DiRico said, I'll be flexible with the draws. We can move some things around. So, they moved forward under it. Draw one, draw two were paid to the tune of approximately $190,000, I believe. When draw three came, Mr. DiRico refused to do the draw. Why? Because he was over budget on the foundation. He knew they were going to be over budget on the foundation six weeks before they closed escrow. He knew they were going to be over budget before he'd even given the plans, because they were going to submit different plans to the city. And I think that's the issue. Those are the facts that the bankruptcy court relied upon in coming to this conclusion, and the district court looked at the facts differently and came to an opposite conclusion. Okay. Your time. We're going to save some rebuttal time? Yeah. I'll save three minutes. Okay. Good morning. May it please the Court. Go ahead. State your name for the record. My name is Dan Kessler. I represent the Respondents. So, Mr. Kessler, you initially moved to dismiss the appeal for lack of jurisdiction, and the appellate commissioner allowed you to raise the arguments in your merits brief. And in your merits brief, there's no sort of abandon any argument that there's a lack of jurisdiction. As I understand it, it would give you an advantage, at least that's your position, because you might, by doing that, and if we were to assert, if we were to decide the merits of these two issues, then on a future appeal, he may not be able to argue any of these other issues because he didn't raise them in the initial appeal. He would be barred. That's correct, Your Honor. Is that right? Is that the advantage you want to try and get here? I didn't look at it as trying to take advantage. What we did was we looked at our motion to dismiss was based on the 21 issues of appeal that were presented to us by the appellant in their initial filing with this court. Then when they filed their motion, opposition to the motion to dismiss, they still had five very vague issues that they were contending they were going to raise. When they finally filed their opening brief here, Your Honor, it was two issues, whether or not the district court erred in finding that this intentional breach was an error and whether or not there was a mistake with regard to the construction loan agreement. With those two legal issues being what they have now limited themselves to, we had no problem addressing those on the merits. But to the extent that they're now going to claim that they still reserve all these other rulings, as you yourself said, the district court made several important rulings below that should stick. They have not been challenged. And those are legal rulings, very important rulings. So whatever we do here, those issues still have to be resolved in light of what the district court did. The issues that have been remanded for factual determination based on the district court's instructions, those obviously need to be decided by the trial court level. However, the legal rulings that have not been challenged in the appellant's opening brief or reply brief, frankly, here cannot be brought up again. We shouldn't have to keep dealing with these issues that have been decided by the district court, legal rulings that are supposed to guide the trial court and its remand. We shouldn't have to be fighting about those again. Well, if we determine that jurisdiction is not proper, it goes back, and the bankruptcy court does everything the district court told it to do, and there's appeal to the district court, and then it comes to us, everything is up. I would agree. All orders are up for review at that point. And that's why, Your Honor, when we saw what the issues they were presenting on appeal were limited to these distinct legal issues, the two issues raised on appeal according to their brief, we wanted to address those. My client has been litigating this case for 10 years. He's an elderly man. He's here in court. We don't want to keep going up and down and up and down three levels of court. He's right there, Your Honor, Mr. DiRico. That is not acceptable. And when we saw the reason we filed the motion to dismiss was we felt like, that's exactly what's going to happen. We're going to come up here. Some issues may or may not be decided. We're going to have to go back down to bankruptcy court, back to district court, and back up here again. Mr. DiRico is not going to make it. Won't that happen anyway? I'm sorry? Won't that happen anyway? Well, Your Honor, as we ask in our respondent's brief, we ask that the court affirm the legal rulings of the district court so that at least that issue is removed. For example, the fact that the purchase and sale agreement, it is far too simple to do what Appellant is suggesting and say that this was a factual determination about materiality. The district court laid out an extensive analysis of what was wrong. And there was clear error, and there was also legal error. And when you talk about the clear error standard, Judge Fitzgerald nailed it. He looked at it and said, how can you have a real estate contract that is breached, supposedly, and the buyer ends up with everything, the property, the notes are canceled, no deeds of trust. He gets to keep all the money that was loaned to him, and he gets a judgment for more money that was promised to be loaned to him, and he gets a judgment for his deposit. That can't be. That is the exact type of clear mistake that the Supreme Court in the Anderson case, I believe it is, that's cited by the district court in our briefs. That is a clear error. But we don't even need that clear error because what Appellant refuses to acknowledge is what Judge Bucklow mentioned. There was an affirmance of this contract. District court nailed that, too. You can't say, hey, wait a minute, you've breached. You haven't given me these plans, and that's a big deal to me, and I'll just keep going. And I'll keep taking. I'll continue to keep the property. I'll work on the property. I'll make two payments. And we've cited several cases in our briefs. The district court cited several cases. In California, if you affirm the contract, you cannot rescind it. Otherwise, you just keep that in your back pocket and you wait until it suits you, just like what we have here. The district court also pointed out that as a matter of law, the damage analysis was completely flawed. You can't have rescission damages when the trial court specifically said it's not giving rescission. And that's what we have. But he didn't do a full rescission because he didn't give the property back to the seller. He let the buyer keep it. It's confounding. But the fact is that we have more than just the materiality issue. So we don't have to decide, did Judge Fitzgerald dive into the facts? The fact is these facts were undisputed. We believe the plans were delivered on the day of escrow. But even if you take what the trial court found and you go to August 7th, the two weeks, the court found that that delay, there was no evidence in the record, none, to suggest that there was any damage from that. And if there was, that would be the limitation of damages. Whatever it would cost to go get the plans yourself because the trial court found, as a matter of its factual findings, that the appellant, Mr. Remont, always had access to these plans as early as June 28th. That's a finding of fact. He also found, the trial court also found, as a finding of fact, that there was no reasonable reliance by Mr. Remont on these, on the two different plans. So the first issue here that you're talking about right now, the one you just addressed, I mean, theoretically, I mean, that's presented to us as a legal issue because you can look at the facts and ask whether those facts resulted in a material breach, as material breach is defined under California law. And then if it is, well, there might be a possibility of other damages, you know, or if it isn't, as the district court said. But the second issue that's raised here about whether or not, I guess it's DiRico, improperly failed to make the third progress payment, that seems, as I looked at that, that seems to be purely factual. And the district court said you really can't decide that issue until those facts are fully developed, and they're not. So when you add that to everything else that the district court remanded back, I don't see, you know, I'm really uncomfortable, I don't know about my colleagues and I don't speak for anybody, but I'm uncomfortable saying that we should assert jurisdiction when there's so much more work that has to be done at the bankruptcy court level. I appreciate that, Your Honors, and all I ask is there is a very specific legal de novo ruling made by the district court with regard to the construction loan agreement. And it's important that this court look at that, and if possible, in declining jurisdiction on some of these things, it affirms these legal rulings. And that ruling was, as a matter of law, Judge Clarkson at the trial level failed to interpret this contract properly. He looked at the four quarters of the contract, and he failed to interpret it properly. And Judge Fitzgerald at the district court said, that is wrong, it is clearly a percentage completion agreement as its terms. It specifically has a term in there that there's going to be an inspector to check the progress of the job for purposes of disbursement. He said Judge Clarkson failed to give that any intent of the party's consideration when he disregarded that. Judge Clarkson also said he could look at, Judge Fitzgerald at the district court said he could also look at the facts as Judge Clarkson decided them. And based on those facts, there's extrinsic evidence that was just not considered. But if you just look at that de novo review and affirm that, that removes an issue that we have to talk about. What I don't want for my client, Your Honors, is to have all these issues up in the air, I guess potentially 21 issues of appeal, which is what the appellants listed on their mediation sheet when they first filed this case. We spent two years to get to this point, actually from the district court, three years from the trial court, and then we go back to Judge Clarkson at the trial court, and we have another three or four year journey to get back here again. And I just implore the court to look at these legal rulings that are well substantiated. Do you ever try to settle this case? We have, Your Honor, of course. I'm a trial lawyer, I try and settle cases every day. I don't get to come here that often. But the fact of the matter is, if you look at the... It looks like this is the kind of case that should be settled. Well, I could address that if the court wants. The problem is... I'm just observing, you know. The real problem is that this got put into bankruptcy, and if you think about it, you have a $4 million piece of property that was liquidated at a fire sale in the bankruptcy court for about $1.5 million. And then all of that money went to Mr. So if you're wondering why it's not settling, I think the answer is kind of in that procedural posture. That's where the money is. I mean, all of this probably would have been done if it had just gone back to the bankruptcy court. If this court accepts jurisdiction on this, why doesn't that mean the same thing is going to happen in 100 other cases that are somewhat different facts but similar postures? If there are legal issues that were determined by the district court that could become law of the case and not be challenged further in this case, that will remove opaque areas for the trial court as well. I believe that Judge Fitzgerald gave very, very specific rulings as well as factual instructions for remand. All we're asking is that those be affirmed so that when Judge Clarkson is looking at that, there's no challenge to that. And there are certain things that were never challenged at all here on this appeal. For example, my client's affirmative claims for breach of contract for two of them. Those are not even addressed in any of the briefs by the appellant. And those were reversed. So my client has two breaches of contract which are worth millions and millions of dollars versus what is probably at best a couple hundred dollar offset for the cost of buying plans. By the way, Your Honor, it's not $30,000 to get the plans. That dispute was over a permit fee for $30,000. The plans themselves, the only evidence in the record which actually Judge Fitzgerald didn't mention, there is evidence in the record that Mr. DiRico had a friend go down to the city and pay $235 to get a copy of those plans. That's the only evidence of what the possible delay, the cost of getting the plans yourself instead of getting them from Mr. DiRico would be. And my client has two breach of contract claims for millions of dollars. You know, the $3.2 million that he actually lost on the purchase and sale and another $200,000 that was lent and never paid back with interest on the construction loan agreement. So, again, Your Honors, I just implore the court to step back as Judge Fitzgerald did for a second and just kind of look. I actually had a chart when I went to the appellate hearing in district court that showed how this transaction looked. Typical transaction, one side has a deed, the other side has money, and you think that they swap. And you start to look at what happens on each side of the ledger, and you can see it in the record. Everything ends up on the appellant's side. Well, wasn't it Mr. DiRico who didn't make the third payment? Yes. And we don't know exactly why or how much over it was. I mean, he had some choices here too. Yes, Your Honor, that's with regard to the construction loan agreement. And even if Mr. DiRico was at fault for not lending that additional draw, what Judge Fitzgerald does is he says, well, wait a minute, how could you then tag the lender for the amount that he didn't lend? I'm not disagreeing with you. I'm just that you're saying, well, we're up here and it's completely the other side's fault of the delay. When there were issues there that were going back to the bankruptcy court and that he could have solved. Well, Judge Bucklow, what we pointed out in our appeal to the district court, and actually the district court does mention it in its opinion, although found that there was enough evidence to support the trial court, the third draw notebook, for some reason, Judge Clarkson subtracted $120,000 for two invoices that were not signed. But none, not one of those invoices actually shows that it was paid. And that was the reason that my client refused to do it. This was supposed to be a progress paid construction agreement. And, of course, that's getting into the facts of the underlying issue. But to answer your question why, and, again, from a legal standpoint on appeal, the decision in the trial court just doesn't make sense with that factual finding. You can't say, okay, you breached the loan agreement by failing to lend money, have no damages of the fact that he couldn't find other lenders. In fact, as Judge Fitzgerald points out, this is in mid-2006. You could have thrown a rock in Orange County and found someone willing to lend you money on Newport Beach property. So with that, Your Honors, I do appreciate your time and consideration. Thank you. Thank you. You had a couple of minutes for rebuttal. I'd first like to address the initial legal finding that counsel would like this court to consider and affirm. That is the very issue I want this court to consider as well. So if this court is going to deny jurisdiction, it can't also decide that, and that's the second half, and that is the inappropriate standard that the district court applied to its analysis of the construction loan agreement. Counsel said what the district court found is there was nothing in the record that the bankruptcy court had considered extrinsic evidence. However, that's not true. It's not true at all. It was the district court's weighing of the extrinsic evidence that was in the record. And I can cite you a quote right now. So in the bankruptcy court's memorandum of decision at Paragraph 74, and this would be Volume 1, Tab 1 of the excerpt of the record, it says, during the meeting, Dear Rico, and this is a finding of fact, during the meeting, Dear Rico insisted that he would pay based on a percentage of completion, and it goes on to discuss percentage of completion. Next paragraph. Moreover, Rumont entered into the construction loan agreement in part on Dear Rico's representation that he would be flexible and reasonable in reallocating funds between line items. Both of those are extrinsic pieces of evidence that are not within the four corners of the CLA. However, the district court stands up and says, I don't see anything in the record that the bankruptcy court considered extrinsic evidence. Right here are two things, and it goes on, and we put in the brief where the district court contradicts itself, two pages after, when it discusses the agreement to be flexible, i.e., something that is extrinsic to the CLA of four corners. So the point here is that is not a factual finding that can be determined unless the court determines it has jurisdiction over this matter, and I understand the court's concerns. Addressing the issue of jurisdiction, and at least counsel's request, his request is made abundantly clear in the tail end of his brief, and it says, and I'll paraphrase, that he requests this court rule on everything so that the only issue that goes back down to bankruptcy court is how much money Transact owes to RHFD Pebble and Dear Rico. However, that is completely opposite to the position he took in the motion to dismiss. The 21 issues on appeal in the initial questionnaire are based on the things that were reversed and remanded. So what he would have this court do is affirm all the reversed and remanded issues so they cannot be acted upon as requested by the district court. And that's completely improper. You can't have your cake and eat it, too. You can't stand up and say, this court doesn't have jurisdiction. You can't rule on it, and then flip around and say, well, I want you to rule on all this because it works in my favor. Roberts. But, you know, here's one, just a thought. He's raised a, the other side's raised a legitimate point, which is that if we do assert jurisdiction and resolve these two legal issues, it goes back down to the bankruptcy court on all the other issues remanded by the district court, and you lose, you try to then come back up here and raise all these other issues, you might have a problem. They might be barred for failure to have raised them with us at this time. What I find, maybe conceptually, I'm not grasping it, that how I can waive an issue on appeal that he says we didn't have jurisdiction to put forth and that this court says that it doesn't have jurisdiction. We don't need to go there. I'm just telling you he raises a good point. I just don't know how inaction on something he says I can't do would somehow waive something going forward. And that to me conceptually just makes no sense. All right. I appreciate your concern. Thank you, Your Honor. The matter is submitted. Thank you very much, Counsel.
judges: D.W. Nelson, Paez, Bucklo